**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:15-cv-00256-MR**

| | |
|---|---|
| i play, inc.,                )<br>                              )<br>            Plaintiff,      )<br>                              )<br>     vs.                    )<br>                              )<br>Aden & Anais, Inc.,      )<br>a New York Corporation )<br>                              )<br>            Defendant.    )<br>                              ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendant's Motion to Dismiss [Doc 9].

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Viewing the pleadings and affidavits in the light most favorable to the Plaintiff, the following is a summary of the relevant facts.[1] The Plaintiff, i play, inc., is a North Carolina corporation that has designed, developed, and sold burp pads under its registered trademark GREEN SPROUTS™ throughout

---

[1] In resolving a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction where the Court has not conducted an evidentiary hearing, the Court must accept the uncontroverted allegations in the Complaint as true, and resolve any factual conflicts in the affidavits in the Plaintiff's favor. See Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1329 (Fed. Cir. 2008).

the United States, including in the state of North Carolina, since September 27, 2010. [Docs. 1 at ¶¶ 1-4; 12-1 at 1].

The Defendant, Aden & Anais, Inc., is a New York Corporation with its principal place of business in Brooklyn, New York. [Doc. 1 at ¶ 8]. The Defendant also sells and advertises a burp pad, the "Burpy Bib," throughout the United States, including in the State of North Carolina. [Id. at ¶¶ 6, 8]. Burpy Bibs are sold with a tag attached to the product that is marked either with the words "Patent Pending No. 29/327649" or "Patent No. D603142." [Docs. 1 at ¶ 27; 12-1 at 1]. This reference is to a patent for an "ornamental design of a protective garment" ("the '142 Patent") which the Defendant purchased and was assigned in October 2015. [Doc. 9-1 at 2].

On or about November 2, 2015, the Defendant, through its attorney, sent the Plaintiff a cease and desist letter asserting that the Plaintiff's GREEN SPROUT burp pad infringes the '142 Patent. [Doc. 1-3 at 2]. On November 18, 2015, the Plaintiff filed the present suit alleging that its burp pad does not infringe "any valid and enforceable claim of [the '142 Patent], either literally or under the Doctrine of Equivalents," and that the '142 Patent "does not in fact cover any of Plaintiff's burp pads . . . ." [Doc. 1 at ¶ 14, 18]. The Plaintiff further alleges that the '142 Patent "is invalid and/or enforceable [sic] for failure to comply with the requirements of 35 U.S.C. § 101 *et seq.* .

2

. . ." [Id. at ¶ 15]. Plaintiff presents four counts in its Complaint. [Doc. 1]. In Counts One through Three, the Plaintiff seeks a declaratory judgment that: (1) the Plaintiff's burp pad does not infringe the '142 Patent; (2) the '142 Patent is invalid; and (3) that the '142 Patent does not cover Defendant's burp pad. [Id. at ¶¶ 21, 24, 31]. In Count Three the Plaintiff also seeks the recovery of damages pursuant to 35 U.S.C. § 292(b),[2] alleging that it suffered a competitive injury when the Defendant purposefully deceived the public by marking its product with an inapplicable patent. [Id. at ¶¶ 25-31]. In Count Four, the Plaintiff alleges that the violations identified in the preceding counts constitute unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75.1-1 ("Chapter 75"). [Id. at ¶¶ 32-35].

On February 12, 2016, the Defendant filed the present Motion pursuant to Rule 12(b)(2) to dismiss for lack of personal jurisdiction. [Doc. 9]. On March 4, 2016, the Plaintiff responded to the Defendant's Motion to Dismiss [Doc. 12], and on March 14, 2016, the Defendant replied thereto. [Doc. 13]. Having been fully briefed by the parties, this matter is now ripe for disposition.

---

[2] "Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article, the word 'patent' or any word or number importing that the same is patented, for the purpose of deceiving the public . . . " may be sued in a civil action by "[a] person who has suffered a competitive injury as a result of [the marking] . . . for recovery of damages adequate to compensate for the injury." 35 U.S.C. § 292.

3

## II. CHOICE OF LAW AND STANDARD OF REVIEW

The instant case involves patent claims of invalidity, noninfringement, and false marking, as well as a Chapter 75 state law claim related thereto. Because patent claims of invalidity, noninfringement, and false marking are "intimately related to patent law" this Court will apply the law of the Federal Circuit regarding personal jurisdiction. See Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1343 (Fed. Cir. 2006). Moreover, because the resolution of the patent claims is a "significant factor" in determining the Chapter 75 state law claim, this Court will also apply the law of the Federal Circuit to analyze personal jurisdiction for Plaintiff's Chapter 75 claim. See 3D Sys., Inc. v. Aarotech Labs., Inc., 160 F.3d 1373, 1378 (Fed. Cir. 1998).

The burden is on the Plaintiff to make a *prima facie* showing that this Court has personal jurisdiction over the Defendant. See Pennington Seed, 457 F.3d at 1344. Since this Court has not held an evidentiary hearing on the issue of personal jurisdiction, this Court will accept the uncontroverted allegations in the Complaint as true, and it will resolve any factual conflicts in the affidavits in the Plaintiff's favor. See Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1329 (Fed. Cir. 2008). If the Plaintiff makes a *prima facie* showing of personal jurisdiction, the burden then shifts to the Defendant

4

to make a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 477 (1985).

Generally, to make a *prima facie* showing of personal jurisdiction over an out-of-state defendant, the plaintiff must show that exercising jurisdiction will (1) comply with the forum state's long-arm statute and (2) comport with due process. Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found., 297 F.3d 1343, 1350 (Fed. Cir. 2002). Because North Carolina's long-arm statute has been construed to extend as far as due process allows, Christian Sci. Bd. of Directors of First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001), this two-pronged test is collapsed into the single inquiry of whether the exercise of personal jurisdiction over the Defendant comports with due process. Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 559 (4th Cir. 2014), cert. denied, 135 S. Ct. 2860 (2015).

## III. DISCUSSION

### A. Personal Jurisdiction

The touchstone for due process is whether the defendant has sufficient "minimum contacts" in the forum State "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (internal quotation

marks omitted). The sufficiency of the contacts depends on the circumstances of the case. A court can have jurisdiction over the person of a defendant for all claims if the defendant's contacts are continuous and systematic. This is referred to as "general jurisdiction." However, more limited contacts can be sufficient to establish personal jurisdiction over a defendant related to a particular claim where those contacts relate to the substance of that claim. This is referred to as "specific jurisdiction." See e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16 (1984).

Here, it is uncontroverted that the Defendant's products, including its Burpy Bib, "have been and are advertised and offered for sale and sold over the internet and in retail outlets in the United States, the State of North Carolina, and in the Western District of North Carolina . . ." [Doc. 1 at ¶ 8]. Retailers include: www.amazon.com, Target, Babies R Us, Kohls, Buy Buy Baby, Nest Organics, The Littlest Birds, Curly Q's Boutique, and Blossoms at Biltmore Park. [Docs. 1 at ¶ 8; 12-2 – 12-8]. It is further uncontroverted that the Defendant maintains its own website, www.adenandanais.com. [Doc. 12-2]. The Defendant's website hosts a store locator with which North Carolina residents can interact to locate North Carolina retailers that carry the Defendant's products. [Id.]. North Carolina residents may also interact

with the Defendant's website to purchase the Burpy Bib directly from the Defendant for shipment to a North Carolina address. [Id.].

The Plaintiff asserts that the foregoing constitutes sufficient minimum contacts for this Court to exercise specific personal jurisdiction over the non-resident Defendant.[3] The determination of whether a court has specific jurisdiction involves the application of a three-prong test, evaluating whether (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. Breckenridge Pharm., Inc. v. Metabolite Labs., Inc., 444 F.3d 1356, 1363 (Fed. Cir. 2006).

Pertinent to the first prong, the Plaintiff's Third and Fourth Counts (false marking and Chapter 75 claims) arise from the sale and offering for sale of the Defendant's products in North Carolina. Where the alleged minimum

---

[3] The Plaintiff does not contend that this Court has general jurisdiction over the Defendant. For a court to exercise general personal jurisdiction over a defendant, the plaintiff must show that the defendant's contacts with the forum state are so continuous and systematic that it is essentially at home in the forum state. Daimler AG v. Bauman, ___ U.S. ___, 134 S. Ct. 746, 754 (2014). A corporation's "paradigm bases" for general jurisdiction are its place of incorporation and principal place of business. Goodyear Dunlop Tires Operations, S.A. v. Brown, ___ U.S. ___, 131 S. Ct. 2846, 2853-54 (2011). Here, the Defendant is not incorporated in nor does it have a principal place of business in North Carolina. The Defendant further has no offices, facilities, or employees within this state, and it has never licensed the '142 Patent in North Carolina. [Doc. 9-1]. Accordingly, because the Plaintiff has not sought to make a showing of "continuous and systematic" contacts of the Defendant to North Carolina, this Court concludes that it does not have general personal jurisdiction over the Defendant.

contacts for specific jurisdiction arise out of a non-resident Defendant's sale of goods, Federal Circuit law calls for the evaluation of the purposeful direction prong under the "stream of commerce" test.  See Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 427 (Fed. Cir. 1996).

There are two theories regarding the application and scope of the stream of commerce test.  See e.g., Celgard, LLC v. SK Innovation Co., 792 F.3d 1373, 1381-82 (Fed. Cir. 2015), AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1363 (Fed. Cir. 2012).  They arise from the majority and concurring opinions in Asahi Metal Industry Co. v. Superior Court of California, Solano County, 480 U.S. 102 (1987).  According to Justice Brennan, "due process is satisfied when the defendant places a product into the stream of commerce while being 'aware that the final product is being marketed in the forum State.'"  Celgard, 792 F.3d at 1381 (quoting Asahi, 480 U.S. at 117 (Brennan J., concurring in part).  Justice O'Connor, on the other hand, opined that this foreseeability must be combined with an intent or purpose to serve the market in the forum State.  Asahi, 480 U.S. at 112 (noting that this intent or purpose may be shown, for example, by "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve

as the sales agent in the forum State."). In Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558 (Fed. Cir. 1994), the Federal Circuit contrasted these differing views and held that, under either theory, due process allows for the exercise of specific personal jurisdiction over a non-resident defendant that purposefully ships its goods through an established distribution channel with the expectation that those goods will be sold in the forum. Beverly Hills, 21 F.3d at 1566. The Defendant argues that "the application and scope of the stream of commerce test is unsettled and its relevance is uncertain at best." [Doc. 13 at 8]. To the contrary, the application and interpretation of the stream of commerce test in Beverly Hills remains mandatory and binding precedent. See AFTG-TG, LLC v. Nuvoton Tech. Corp., 689 F.3d 1358, 1363 (Fed. Cir. 2012).

Here, as in Beverly Hills, the instant Defendant's contacts with North Carolina satisfy due process under either theory of the stream of commerce test. The Defendant purposefully ships its products, including the Burpy Bib, through numerous distribution channels including nationwide retailers such as Target, Kohls, and Babies R Us, and North Carolina retailers such as Nest Organics, The Littlest Birds, and Curly Q's Boutique. In addition, the Defendant's use of a store locator, to direct customers to stores in North Carolina where its products may be found, demonstrates that the Defendant

has the specific expectation that its goods be sold in this forum.  As held by the Federal Circuit in Beverly Hills, "[n]o more is usually required to establish specific jurisdiction."  Id. at 1565.

Even if the aforementioned contacts were insufficient, however, the Defendant's maintaining of its website, www.adenandanais.com, independently supports this Court's exercise of specific personal jurisdiction over the non-resident Defendant.  While the Federal Circuit has not directly confronted whether specific personal jurisdiction may arise out of the operation of a website, many courts have noted that the degree of interactivity of a website is relevant to the personal jurisdiction analysis.  Thermolife Int'l, LLC v. Prosource Performance Products, 2015 WL 9480023, at *4 (D.N.J. Dec. 29, 2015).  Other Circuits that have confronted this issue, however, agree that the "sliding scale" test established in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) is the "seminal authority regarding personal jurisdiction based upon the operation of an Internet web site."  Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. 2003); accord, ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 713 (4th Cir. 2002); Mink v. AAAA Dev. LLC, 190 F.3d 333, 336 (5th Cir. 1999); Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 419 (9th

Cir. 1997); Soma Med. Int'l v. Standard Chartered Bank, 196 F.3d 1292, 1297 (10th Cir. 1999).

The sliding scale test considers the degree of interactivity of a website to determine whether personal jurisdiction may be constitutionally exercised based upon its operation. Zippo, 952 F. Supp. at 1124. At one end of the spectrum, passive websites that merely make information available do not establish personal jurisdiction. At the other end, a defendant that does business over the internet, entering into contracts with residents of a particular forum, is subject to the personal jurisdiction of that forum. Id.

In the instant case, the Defendant's website is far toward the active end of this spectrum. For example, North Carolina residents can interact with the Defendant's website to locate North Carolina retailers that carry the Defendant's products. More significantly, North Carolina residents can interact with the Defendant's website to purchase the Burpy Bib directly from the Defendant for shipment to a North Carolina address. The Defendant's fulfillment of such orders is precisely the kind of "entering into contracts with residents of a forum" discussed in Zippo that would fulfill the first prong of specific personal jurisdiction, namely whether the Defendant has purposely directed its activities to this jurisdiction. See id.

The second prong for exercising specific personal jurisdiction over a non-resident defendant concerns the relationship between the claim at issue and these directed activities. This hinges on whether the claim "arises out of or relates to" the Defendant's purposefully directed activities. Breckenridge 444 F.3d at 1363. As addressed supra, the Defendant's purposefully directed activities include selling its allegedly falsely-marked Burpy Bib via an established distribution network and by its own website to residents of North Carolina. The Plaintiff's alleges that it has suffered a competitive injury due to the Defendant's sale of these falsely-marked goods in North Carolina. Accordingly, the Plaintiff's Chapter 75 and false marking claims "arise[ ] out of or relate[ ] to" the Defendant's purposefully directed activities. See Breckenridge, 444 F.3d at 1363.[4]

The Court now turns to the final prong: whether the assertion of personal jurisdiction is reasonable and fair. To make this determination, the Court may consider "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the

---

[4] The Defendant argues in its Reply brief that the Plaintiff's false marking claim is merely "a few conclusory allegations of legal elements plead[ed] in an attempt to create a jurisdictional 'hook' to hail [the Defendant] into a foreign tribunal." [Doc. 13 at 5]. However, the question of whether the Plaintiff has stated a claim for false marking is not currently before this Court.

12

most efficient resolution of controversies," and "the shared interest of the several States in furthering fundamental substantive social policies." Breckenridge, 444 F.3d at 1367 (quoting Burger King, 471 U.S. at 477). While "[t]hese considerations may sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required, . . . where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477 (internal citations omitted). Notably, "such defeats of otherwise constitutional personal jurisdiction 'are limited to the rare situation in which the plaintiff's interest and the state's interest in adjudicating the dispute in the forum are so attenuated that they are clearly outweighed by the burden of subjecting the defendant to litigation within the forum.'" Akro Corp. v. Luker, 45 F.3d 1541, 1549 (Fed. Cir. 1995) (quoting Beverly Hills Fan, 21 F.3d at 1568).

Plaintiff argues, correctly, that North Carolina has an interest in adjudicating a dispute involving an out-of-state Defendant who allegedly sends products into the State bearing false markings to deceive North Carolina residents. [Doc. 12 at 12-13]. North Carolina also has a substantial

13

interest in adjudicating a claim regarding the alleged competitive harm to a forum resident suffered as a result of the Defendant's falsely marked goods. Plaintiff further asserts that it would be most convenient and effective for it to adjudicate this dispute in North Carolina. [Id.]. The Defendant emphasizes the lack of its physical presence in the forum [Doc. 13 at 8-9], but that alone fails to present a "compelling case" that exercising personal jurisdiction over it is unreasonable. See Avocent, 552 F.3d at 1331. As such, the third prong of the test for specific personal jurisdiction is met.

The Plaintiff having satisfied the Court that all three prongs of specific jurisdiction are fulfilled by Defendant's contacts with this district, it is concluded as a matter of law that this Court has specific personal jurisdiction over the Defendant with regard to Plaintiff's false marking and Chapter 75 claims.

### B. Pendent Personal Jurisdiction

Pendent personal jurisdiction, also known as supplemental jurisdiction, enables a court having original specific jurisdiction over a person with regard to a particular claim, to exercise jurisdiction over other claims involving that person for which it otherwise may not have jurisdiction, so long as the other matters "form part of the same case or controversy." 28 U.S.C. § 1367. "This statute confers supplemental jurisdiction with respect to both subject matter

and personal jurisdiction . . . ." Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1206 (Fed. Cir. 2003). "The Supreme Court has held that such claims must arise out of 'a common nucleus of operative fact.'" Silent Drive, 326 F.3d at 1206 (Fed. Cir. 2003) (quoting United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 16 L.Ed.2d 218 (1966)).

This Court has determined that it has specific personal jurisdiction over the Defendant with regard to Plaintiff's false marking and Chapter 75 claims. Resolution of these claims requires a determination of whether the Burpy Bib is in fact covered by the '142 Patent. Plaintiff, in its other claims, seeks a declaratory judgment with regard to (1) noninfringement of the '142 Patent; (2) invalidity of the '142 Patent; and (3) that the '142 Patent does not cover Defendant's burp pad. Accordingly, it is clear that the validity and applicability of the '142 Patent form the common nucleus of operative facts for all of Plaintiff's claims. Based thereon, the Court concludes as a matter of law, that it has specific personal jurisdiction over the Defendant as to all of Plaintiff's claims.

## **O R D E R**

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion to Dismiss [Doc. 9] is **DENIED**.

**IT IS SO ORDERED.**

Signed: May 10, 2016

Martin Reidinger
United States District Judge